**UNITED STATES DISTRICT COURT FOR
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HUMANS & RESOURCES, LLC, doing business as Cadence Restaurant**<br><br>                    **Plaintiff,**<br><br>    **vs.**<br><br>**FIRSTLINE NATIONAL INSURANCE COMPANY,**<br>                    **Defendant.** | **No. 2:20-CV-02152** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT FIRSTLINE NATIONAL INSURANCE
COMPANY'S MOTION TO DISMISS THE AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

| | |
|---|---|
| Richard M. Golomb, Esq.<br>Kenneth J. Grunfeld, Esq.<br>**GOLOMB & HONIK, P.C.**<br>1835 Market Street, Suite 2900<br>Philadelphia, PA 19103<br>Telephone: (215) 985-9177<br>Facsimile: (215) 985-4169<br>rgolomb@golombhonik.com<br>kgrunfeld@golombhonik.com | Arnold Levin, Esq.<br>Laurence Berman, Esq.<br>Frederick Longer, Esq.<br>Daniel Levin, Esq.<br>**LEVIN SEDRAN & BERMAN LLP**<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106-3697<br>Telephone: (215) 592-1500<br>Facsimile: (215) 592-4663<br>alevin@lfsblaw.com<br>flonger@lfsblaw.com<br>dlevin@lfsblaw.com |
| W. Daniel "Dee" Miles, III<br>Rachel N. Boyd<br>Paul W. Evans<br>**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**<br>P.O. Box 4160<br>Montgomery, AL 36103<br>Telephone: (334) 269-2343<br>Facsimile: (334) 954-7555<br>dee.miles@beasleyallen.com<br>rachel.boyd@beasleyallen.com<br>paul.evans@beasleyallen.com | *Counsel for Plaintiff* |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND......................................... 3

        A.      COVID-19 Hits the United States and Pennsylvania ............................. 3

        B.      Impact on Cadence................................................................................... 4

        C.      Firstline National Insurance Company and its Current Dispute with Plaintiff ....... 5

III.    APPLICABLE LEGAL STANDARDS ............................................................. 6

        A.      Standard for Motion to Dismiss in an Insurance Contract Case............................. 6

        B.      Defendant's Motion is Crafted in the Nature of a Motion for Summary Judgment
                Even if Styled as a Motion to Dismiss, But the Standard to Apply to a Motion to
                Dismiss is Much Different and Favorable to a Plaintiff Who Has Not Yet Had an
                Opportunity to Take Discovery and Develop the Case Facts ................................ 8

IV.     ARGUMENT ...................................................................................................... 11

        A.      The Court Should Not Enforce Defendant's Purported Virus Exclusion ............. 11

                1.      Plaintiff's Contract Is Inherently Adhesive and Controlling Pennsylvania Law
                        Dictates it Must be Analyzed with Careful Scrutiny ........................................... 11

                2.      The Purported Virus Exclusion in Plaintiff's policy is Ambiguous and Does Not
                        Apply. ................................................................................................................... 12

                3.      Dismissing Plaintiff's Case Based Upon the Virus Exclusion at this Stage Would
                        be Premature ......................................................................................................... 14

                4.      Plaintiff's Regulatory Estoppel Theory Provides an Adequate Basis for Further
                        Investigation ......................................................................................................... 15

        B.      Plaintiff has Suffered and Sufficiently Pled Physical Loss of or Damage to its
                Property and Nearby Property .............................................................................. 17

        C.      Civil Authority Coverage Applies to Plaintiff's Losses ....................................... 25

                1.      Plaintiff Sufficiently Pled that The Civil Authority Orders Prohibited Access to the
                        Premises at Issue .................................................................................................. 25

                2.      The Civil Authority Orders were Issued as a Result of Damage to the Insured
                        Property and Nearby Property. ............................................................................. 26

D.    The Doctrine of Reasonable Expectations is Applicable ....................................... 27

V.    CONCLUSION ............................................................................................................. 28

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Am. Guarantee & Liab.. Ins. Co. v. Ingram Micro, Inc.*,
   No. 99-185 TUC ACM, 2000 WL 726789 (D. Ariz. April 18, 2000) ..................................... 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................................... 6

*Atl. Deli & Grocery v. United States*,
   2011 WL 2038758 (D.N.J. May 23, 2011) ............................................................... 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................... 6, 7

*Brobst v. Columbus Servs. Int'l*,
   761 F.2d 148 (3d Cir. 1985) .......................................................................................... 9

*Burtch v. Milberg Factors, Inc.*,
   662 F.3d 212 (3d Cir. 2011) .......................................................................................... 6

*Celebre v. Windsor-Mount Joy Mut. Ins. Co.*,
   No. CIV. A. 93-5212, 1994 WL 13840 (E.D. Pa. Jan. 14, 1994) ............................................ 11

*Colony Ins. Co. v. Zena Assocs., LLC*,
   2012 WL 12897100 (E.D. Pa. Dec. 17, 2012) ........................................................... 7

*Colorcon, Inc. v. Lewis*,
   792 F. Supp. 2d 786 (E.D. Pa. 2011) .......................................................................... 8

*Conley v. Gibson*,
   355 U.S. 41 (1957) .......................................................................................................... 6

*Davis v. Wells Fargo*,
   824 F.3d 333 (3d Cir. 2016) ..................................................................................... 6, 16

*Dowling v. City of Phila.*,
   855 F.2d 136 (3d Cir.1988) ........................................................................................... 9

*Essex v. BloomSouth Flooring Corp.*,
   562 F.3d 399 (1st Cir. 2009) ...................................................................................... 18

*Foglia v. Renal Ventures Mgmt., LLC*,
   754 F.3d 153 (3d Cir. 2014) ........................................................................................ 6

*Fountain Powerboat Indus., Inc. v. Reliance Ins. Co.*,
    119 F. Supp. 2d 552 (E.D.N.C. 2000) .................................................................. 18

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ............................................................................... 6

*Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*,
    193 F.3d 742 (3d Cir. 1999) ............................................................................... 7

*General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*,
    887 F.2d 228 (9th Cir. 1989) ............................................................................... 7

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*,
    No. 2:12-cv-04418, 2014 WL 6675934 (D.N.J. Nov. 25, 2014) ........................... 19

*Hussey Copper, Ltd. v. Arrowood Indem. Co.*,
    391 F. App'x 207 (3d Cir. 2010) ........................................................................ 15

*Hussey Copper, Ltd. v. Royal Ins. Co. of Am.*,
    567 F. Supp. 2d 774 (W.D. Pa. 2008) ............................................................ 15, 16

*Kost v. Kozakiewicz*,
    1 F.3d 176 (3d Cir. 1993) ................................................................................... 6

*Kunji Harrisburg, LLC v. Axis Surplus Ins. Co.*,
    2020 WL 1469905 (E.D. Pa. Mar. 18, 2020) ........................................................ 8

*Larkin v. Geico Gen. Ins. Co.*,
    2015 WL 667515 (E.D. Pa. Feb. 13, 2015) ........................................................... 7

*Mastrobuono v. Shearson Lehman Hutton*,
    514 U.S. 52 (1995) ............................................................................................ 8

*Mayer v. Belichick*,
    605 F.3d 223 (3d Cir. 2010) ............................................................................. 16

*Meyer Nat. Foods, LLC v. Liberty Mut. Fire Ins. Co.*,
    218 F. Supp. 3d 1034 (D. Neb. 2016) ................................................................ 14

*Michael Carbone, Inc. v. Gen. Acc. Ins. Co.*,
    937 F. Supp. 413 (E.D. Pa. 1996) ....................................................................... 8

*Motorists Mutual Ins. Co. v. Hardinger*,
    131 Fed. Appx. 823 (3d Cir. 2005) ............................................................... 18, 21

*Narricot v. Fireman's Fund Ins. Co.*,
  No. CIV.A.01-4679, 2002 WL 31247972 .................................................... 18

*Nat'l Liab. & Fire Ins. Co. v. Brimar Transit, Inc.*,
  433 F. Supp. 3d 747 (W.D. Pa. 2020) ........................................................ 7

*One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11 C 2520,
  2015 WL 2226202 (N.D. Ill. April 22, 2015) ............................................. 19

*Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.*,
  No. 1:15-CV-01932-CL, 2016 WL 3267247 (D. Or. June 7, 2016) ......................... 20

*Pennsylvania, Dep't of Pub. Welfare v. Sebelius*,
  674 F.3d 139 (3d Cir. 2012) .................................................................. 9

*Phila. Parking Auth. v. Fed. Ins. Co.*,
  385 F. Supp. 2d 280 (S.D.N.Y. 2005) ........................................................ 21

*Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*,
  976 F.2d 1037 (7th Cir. 1992) ............................................................... 13

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*,
  311 F.3d 226 (3d Cir. 2002) .................................................................. 21

*Reliance Ins. Co. v. Moessner*,
  121 F.3d 895 (3d Cir. 1997), as amended .................................................. 27

*Sames v. Gable*,
  732 F.2d 49 (3d Cir.1984) ..................................................................... 10

*Sciolla v. W. Bend Mut. Ins. Co.*,
  987 F. Supp. 2d 594 (E.D. Pa. 2013) ..................................................... 11, 12

*Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*,
  64 F.3d 1991 (6th Cir. 1995) ................................................................. 18

*Shahid v. Borough of Darby*,
  666 Fed. Appx. 221 (3d Cir. 2016) ........................................................... 6

*Spector v. Fireman's Fund Ins. Co.*,
  451 F. App'x 130 (3d Cir. 2011) .............................................................. 7

*Stack Metallurgical Servs., Inc. v. Travelers Indem. Co. of Connecticut*,
  No. 05-1315-JE, 2007 WL 464715 (D. Or. Feb. 7, 2007) ................................. 19

*Studio 417, Inc., et al. v. The Cincinnati Insurance Company*,
No. 4:20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) ....................... passim

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*,
No CV 17-04908 AB, 2018 WL 3829767 (C.D. Cal. July 11, 2018) ...................................... 18

*TRAVCO Ins. Co. v. Ward*,
715 F. Supp. 2d 699 (E.D.Va. 2010) ................................................................................. 19

*UPMC Health System v. Metropolitan Life Ins. Co.*,
391 F.3d 497 (3d Cir. 2004) .............................................................................................. 27

*W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*,
712 F.3d 165 (3d Cir. 2013) ................................................................................................ 7

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
382 U.S. 172 (1965) ............................................................................................................ 9

*Warren Gen. Hosp. v. Amgen Inc.*,
643 F.3d 77 (3d Cir. 2011) .................................................................................................. 6

*White Motor Co. v. United States*,
372 U.S. 253 (1963) ............................................................................................................ 9

**State Cases**

*Bank of the W. v. Superior Court*,
2 Cal. 4th 1254, 833 P.2d 545 (Cal. 1992) ...................................................................... 27

*Betz v. Erie Ins. Exch.*,
2008 PA Super 221, 957 A.2d 1244 (2008) ..................................................................... 18

*Bishops, Inc. v. Penn Nat. Ins.*,
984 A.2d 982 (Pa. Super. Ct. 2009) ........................................................................... 11, 12

*Bubis v. Prudential Prop. & Cas. Ins. Co.*,
718 A.2d 1270 (Pa. Super. 1998) ................................................................................... 18

*Collister v. Nationwide Life Ins. Co.*,
388 A.2d 1346 (Pa. 1978) ............................................................................................... 11

*Dundee Mut. Ins. Co. v. Marifjeren*,
587 N.W.2d 191 (N.D. 1998) ......................................................................................... 19

*Farmers Ins. Co. of Oregon v. Trutanich*,
   858 P.2d 1332 (Or. 1993) ................................................................ 19

*Friends of Danny DeVito v. Wolf*,
   227 A.3d 872 (Pa. 2020) ................................................................ 22

*General Mills, Inc. v. Gold Medal Insurance Co.*,
   622 N.W. 2d 147 (Minn. Ct. App. 2001) ................................................ 20, 21

*Haun v. Cmty. Health Sys., Inc.*,
   14 A.3d 120 (Pa. Super. Ct. 2011) ...................................................... 17

*Healy Tibbitts Constr. Co.*,
   72 Cal. App. 3d ............................................................................. 27

*Madison Constr. Co. v. Harleysville Mut. Ins. Co.*,
   735 A.2d 100 (Pa. 1999) ................................................................ 7, 12

*Miller v. Boston Ins. Co.*,
   218 A.2d 275 (1966) ......................................................................... 8

*Murray v. State Farm Fire & Cas. Co.*,
   509 S.E.2d 1 (W.Va. 1998) .............................................................. 20, 24

*Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*,
   563 N.W.2d 296 (Minn. Ct. App. 1997) .................................................. 19

*Sullivan v. Std. Fire Ins. Co.*,
   No. 515, 2007, 2008 WL 361141 (Del. Feb. 11, 2008) ................................... 19

*Sun Co. v. Pa. Tpk. Comm'n*,
   708 A.2d 875 ................................................................................... 8

*Sunbeam Corp. v. Liberty Mut. Ins. Co.*,
   781 A.2d 1189 (Pa. 2001) .............................................................. 16, 17

*Swarner v. Mut. Ben. Grp.*,
   72 A.3d 641 (Pa. Super. Ct. 2013) ...................................................... 12

*Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*,
   968 A.2d 724 (N.J. App. 2009) ............................................................ 19

*Western Fire Ins. Co. v. First Presbyterian Church*,
   437 P.2d 52 (Colo. 1968) .................................................................. 19

**Federal Rules**

Fed. R. Civ. P. 8(a)(2) ............................................................................................. 6

Fed. R. Civ. P. 11(b) ............................................................................................. 22

Fed. R. Civ. P. 12 ................................................................................................. 8

Fed. R. Civ. P. 12(b)(6) .............................................................................. 6, 7, 10

Fed. R. Civ. P. 56(c)(3) .......................................................................................... 8

Fed. R. Civ. P. 56(d) ........................................................................................ 9, 10

**Other Authorities**

Restatement (Second) of Contracts § 206 ............................................................. 8

I.      **INTRODUCTION**

Humans & Resources, LLC, doing business as Cadence Restaurant (hereinafter "Cadence" or "Plaintiff") is a restaurant with its location in the County of Philadelphia, Pennsylvania that had a thriving business prior to the onset of the Coronavirus pandemic. Humans & Resources, LLC has always been a two-person Limited Liability Company whose members, Jon Nodler and Samantha Kincaid, are citizens of and reside in the Commonwealth of Pennsylvania. When the pandemic hit the nation, including Pennsylvania and Philadelphia County specifically, government officials acted in an effort to control the pandemic and the spread of the virus. In Pennsylvania, the Governor, and in Philadelphia, the Mayor and the Department of Health, issued orders that required restaurants to close. The initial orders required the complete shutdown of restaurants, while subsequent orders permitted limited services.

Plaintiff was required to abide by these orders and did so. However, in anticipation that one day such a closure might occur causing Plaintiff's restaurants to suffer business interruption, business income and extended expense losses, Plaintiff had purchased an ***ALL RISK*** business interruption policy from the Firstline National Insurance Company (hereinafter "Firstline" or "Defendant") to help it weather any potential financial storm caused by a forced closure.

Cadence is one of several of thousands of businesses around the country that have similarly been forced to close operations because of the pandemic and suffer losses. The situation has permeated the economy and been the subject of much national scientific and political debate. Also, as noted in the Declaration of Richard M. Golomb, Esquire (co-counsel for Plaintiff here, attached as Exhibit A hereto), a number of different types of approaches are being considered to handle the financial consequences of businesses suffering interruption and losses. *Id.* at ¶ 10 (including discussing "Black Swan" approach by Chubb Insurance).

But against this backdrop of uncertainty in the country, Firstline asserts that it owes Plaintiff no benefits under its All Risk policy.  This, despite Plaintiff having paid valuable premium payments to Firstline to protect itself against the very types of losses sustained and intended to be covered by an All Risk policy.  Firstline wrongly asserts the following bases to support its Motion to Dismiss:

1.      The Virus Exclusion precludes coverage for Plaintiff's claims;

2.      Plaintiff failed to allege physical loss or damage to its property

*See* Firstline Brief in Support of Motion to Dismiss.  Rather than provide benefits to Plaintiff for losses as to which Firstline received valuable premiums, the Defendant instead seeks to foreclose such coverage through litigation based on invalid policy interpretations.  In addition, Firstline relies on cases it claims are on point that dismissed business interruption claims arising out of COVID-19 losses; however, more relevant and persuasive decisions have been issued in other courts throughout the country holding that plaintiffs have not only stated a claim for coverage under policy provisions identical to those at issue here, but given the novel factual issues brought on by a once-in-a-lifetime pandemic, dismissal at the Rule 12 stage is premature and discovery must be conducted to establish a record. *See Optical Services et. al v. Franklin Mutual Insurance Company*, Dkt. No. BER-L-3681-20 (Aug. 13. 2020); *Studio 417, Inc., et al. v. The Cincinnati Insurance Company*, No. 4:20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020); *K.C. Hopps, Ltd. v. The Cincinnati Insurance Company*, No. 4:20-cv-00437-SRB (W.D. Mo. Aug. 12, 2020; *see also* Section IV-A (2), *infra*.

As discussed herein, the Motion should be denied outright, or at the minimum, a decision on the motion should be stayed pending an opportunity for Plaintiff to take discovery in this matter to address the many factual issues that the Motion raises, regardless of Defendant's efforts to describe the issues it is presenting as pure questions of law.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      COVID-19 Hits the United States and Pennsylvania

In and around January 2020, the United States began to see its first cases of COVID-19. As the pandemic worsened and spread across the nation, federal, state and local authorities took action to address the pandemic and provide for the safety and welfare of the public.  In Philadelphia, Pennsylvania, where Cadence is located, the Governor and other local officials all took action.

Accordingly, on March 6, 2020, Pennsylvania Governor Tom Wolf issued a Proclamation of Disaster Emergency, a formal recognition of an emergency situation in this Commonwealth due to the pandemic.  *See* Amended Complaint at ¶ 50 and Civil Authority Order.  Just ten days later, on March 16, the City of Philadelphia announced the mandatory closure of all non-essential businesses, including restaurants such as Plaintiff's, with the Order stating specifically that restaurants "cannot allow dine-in services."  *See* https://www.phila.gov/2020-03-16-city-announces-new-restrictions-on-business-activity-in-philadelphia/ (last visited July 21, 2020); Amended Complaint ¶ 51.  Shortly thereafter, on March 19, 2020, Governor Wolf issued a more restrictive order that required all non-life-sustaining businesses in the Commonwealth to cease operations but permitted "[l]ife sustaining businesses to remain open, ***but they must follow, at a minimum***, the social distancing practices and other mitigation measures defined by the Centers for Disease Control to protect workers and patrons."  *See* https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order (last visited September 20, 2020) (emphasis added); Amended Complaint at ¶ 52.  On March 22, 2020, Philadelphia Mayor Jim Kenney issued an Emergency Order Temporarily Prohibiting Operation of Non-Essential Businesses and Congregation of Persons to Prevent the

Spread of 2019 Novel Coronavirus, ordering the closure of all businesses except those previously listed by the Governor of Pennsylvania as Life-Sustaining Businesses, noting that "COVID-19 may remain viable for hours to days on surfaces made from a variety of materials located in businesses and other places, thus contaminating certain property and places." *See* Amended Complaint at ¶ 53 and Civil Authority Order.  On April 28, 2020, Governor Wolf issued an Order continuing the Commonwealth's directive that facilities that fall under the "Food Services and Drinking Places" category of *Industry Operation Guidance* were only permitted to continue physical operations for "takeout and delivery."  Pursuant to the updated Order, facilities such as the Covered Property remain not permitted to service dine-in customers.  *See* https://www.scribd.com/document/452553026/UPDATED-11-45am-April-28-2020-Industry-Operation-Guidance (last visited May 1, 2020). *See* Amended Complaint at ¶ 61.

The status of the closures has not been stagnant because the Coronavirus and the pandemic itself have not been stable.  To the contrary, there have been flares and surges of cases, requiring governmental authorities to modify and re-issue orders to address the fluid situation for the safety of the public.

B.      **Impact on Cadence**

Cadence owns and operates a modern restaurant that thrives on offering its customers an exceptional dine-in restaurant experience. *See* Amended Complaint at ¶ 13. Due to the government closure orders detailed above, Plaintiff was forced to suspend operation of its physical location and prohibit patrons from accessing the restaurant beginning on March 16, 2020 and continuing to the present day.  *See* Amended Complaint at ¶¶ 61-73. Thus, starting on March 16, 2020, Plaintiff lost the functionality and utility of its business including, but not limited, to its dining room, bar, tables and chairs.  *Id*.  Understandably, Plaintiff suffered immense business income losses resulting

from the government-issued mandatory closure orders.  *See* Amended Complaint at ¶¶ 61-73.

There can be no dispute here that Plaintiff has alleged that it suffered business income loss, business interruption and extended business expenses, all of which are the types of losses covered by Defendant's Insurance Policy issued to Plaintiff, and these facts are well pleaded in the Amended Complaint and must be accepted as true for purposes of this Motion.

### C.      Firstline National Insurance Company and its Current Dispute with Plaintiff

Prior to the mandatory closure orders, Plaintiff purchased from Defendant a Businessowners insurance policy with Policy Number 192011, issued for the period of January 1, 2020 to January 1, 2021 (hereinafter "Policy"), which provides coverage to Plaintiff for losses sustained due to the necessary suspension of its operations.  *See* Amended Complaint at ¶¶ 12-15 and Policy.  Plaintiff, who had no part in the drafting of the Policy language, purchased the policy and paid substantial premiums to Defendant with the reasonable expectation that Defendant would provide for business income loss, extra expense, and civil authority coverage. *See* Amended Complaint at ¶ 32. There is no dispute that the Policy is in full force and effect.

Relevant to the pending motion, the Policy contains specific coverage for any mandated suspension of business operation at the insured's location by order of government authority—a provision known in the insurance industry as Civil Authority Coverage.  *See* Policy at pg. 33.  Put simply, the policy provision states that in the event of a mandatory closure by order of government where access to the premises is prohibited, as is the case here, Defendant is to provide coverage for Plaintiff's business income and extra expense losses.

Due to the mandated closure orders issued by the Commonwealth of Pennsylvania, Plaintiff commenced the present action on May 4, 2020 seeking a declaration that it is entitled to coverage under the Civil Authority provision of its Policy issued by Defendant.  Defendant filed the present Motion to Dismiss the Complaint on November 11, 2020.

III.     **APPLICABLE LEGAL STANDARDS**

A.     **Standard for Motion to Dismiss in an Insurance Contract Case**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).

In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)) (internal quotation marks omitted).

A plaintiff's pleading obligation is to set forth "'a short and plain statement of the claim,'" which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556), but it "'requires showing more than a sheer possibility that a defendant has acted unlawfully.'" *Shahid v. Borough of Darby*, 666 Fed. Appx. 221, 222 n.1 (3d Cir. 2016) (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).  In the end, the court will only grant a motion to dismiss brought

pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Twombly*, 550 U.S. at 555). In essence, judgment on the pleadings cannot be granted where there is an issue of fact which would support recovery. *See Nat'l Liab. & Fire Ins. Co. v. Brimar Transit, Inc.*, 433 F. Supp. 3d 747, 757 (W.D. Pa. 2020) (citing *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church* 887 F.2d 228, 230 (9th Cir. 1989)).

In the context of pleadings related to insurance policies and interpreting insurance policies, the court must read each policy as a whole and construe its meaning according to its plain language. *Spector v. Fireman's Fund Ins. Co.,* 451 F. App'x 130, 136 (3d Cir. 2011). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 735 A.2d 100, 106 (Pa. 1999) (citation and internal quotation marks omitted). A provision is ambiguous if reasonable people could fairly ascribe differing meanings to it. *Larkin v. Geico Gen. Ins. Co.*, 2015 WL 667515, at *3 (E.D. Pa. Feb. 13, 2015) (citing *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.,* 193 F.3d 742, 746 (3d Cir. 1999)). Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Madison Constr. Co.*, 735 A.2d at 105. "Ambiguity is not to be resolved in a vacuum. Contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Colony Ins. Co. v. Zena Assocs., LLC*, 2012 WL 12897100, at *2 (E.D. Pa. Dec. 17, 2012) (citing *Madison Const.*, *supra*).

Further, in an adhesion contract – a contract drafted by one party and signed by another party – it is well established that "in construing any written instrument, and particularly an

7

insurance contract, the instrument must be strictly construed against the writer." *Kunji Harrisburg, LLC v. Axis Surplus Ins. Co.*, 2020 WL 1469905, at *3 (E.D. Pa. Mar. 18, 2020) (citing *Miller v. Boston Ins. Co.*, 218 A.2d 275, 277 (1966).  *See also Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 62–63 (1995) (ambiguities are construed in favor of the non-drafting party).  "Under the rule of *contra proferentem,* any ambiguous language in a contract is construed against the drafter and in favor of the other party if the latter's interpretation is reasonable." *Colorcon, Inc. v. Lewis*, 792 F. Supp. 2d 786, 797 (E.D. Pa. 2011) (citing *Sun Co. v. Pa. Tpk. Comm'n,* 708 A.2d 875, 878–79 (Pa.Commw.Ct.1998; Restatement (Second) of Contracts § 206)).

> **B.     Defendant's Motion is Crafted in the Nature of a Motion for Summary Judgment Even if Styled as a Motion to Dismiss, But the Standard to Apply to a Motion to Dismiss is Much Different and Favorable to a Plaintiff Who Has Not Yet Had an Opportunity to Take Discovery and Develop the Case Facts**

The threshold question and proof necessary in a 12(b)(6) motion is in stark contrast to the standard set forth in a Rule 56 summary judgment motion.  A Rule 12 motion is filed at the close of pleadings and determines whether a plaintiff's claims lack facial plausibility.  On the other hand, a Rule 56 motion is filed after the close of all discovery, and the movant must prove that there is no genuine dispute as to any material fact at which point the movant is entitled to judgment as a matter of law.  Moreover, in a summary judgment motion, the court considers all cited materials and may also examine evidence beyond the pleadings.  Fed. R. Civ. P. 56(c)(3); *see also Michael Carbone, Inc. v. Gen. Acc. Ins. Co.*, 937 F. Supp. 413, 416 (E.D. Pa. 1996).

Here, regardless of how Defendant has attempted to characterize its Motion and avoid it appearing as a Motion for Summary Judgment, the reality is that Defendant's Motion raises complex factual issues involving the interpretation of the Policy and its provisions.  Defendant has made a factual challenge – that Plaintiff's damage was not caused by "direct physical loss of or damage to its property" and that the Civil Authority grant of coverage does not apply because

access to the premises was not "prohibited" – at this early stage in the proceedings in an attempt to strip Plaintiff of the protections and deference to the facts as pleaded by the Plaintiff that is provided under 12(b)(6) review. In a motion to dismiss, the factual allegations of a pleading are taken as true. The Court must construe the pleading in the manner most favorable to the nonmovant and decide whether, on the face of the claim, a claim is stated upon which relief can be granted, and must bear in mind the policy that, unless there is no doubt as to the result, cases should be analyzed based upon their merits. *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965), *see also White Motor Co. v. United States*, 372 U.S. 253 (1963). "[A] court may not dispose of the case on the merits without giving the opposing party a reasonable opportunity to present to the court material relevant to the dispositive issue." *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 154 (3d Cir. 1985).

Nevertheless, Plaintiff wants to be clear that it has no desire in converting this motion into a summary judgment motion now. And no notice has been given by or to the parties of such conversion. However, in an abundance of caution, if the Court were to consider the instant Motion to be more equivalent to a motion for summary judgment because of the fact disputes that it raises, Rule 56(d) allows for a nonmovant to show the court that essential facts or issues exist to justify that the court should defer consideration of such a motion through the showing of affidavits or declarations. Fed. R. Civ. P. 56(d). In *Dowling v. City of Phila.,* 855 F.2d 136, 140-41 (3d Cir.1988), the Third Circuit construed Rule 56(d) as requiring that "a party seeking further discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *See Pennsylvania, Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 156 (3d Cir. 2012) (stating that Rule 56(d) specifies procedure to be followed when

party opposing summary judgment believes that additional time for discovery is necessary). The Third Circuit has held that "a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course" if the party opposing summary judgment files an affidavit addressing the above-mentioned three requirements with specificity, and particularly when detailed information, necessary to the successful opposition to summary judgment, is in the sole possession of the moving party. *Sames v. Gable,* 732 F.2d 49, 51 (3d Cir.1984); *see also Atl. Deli & Grocery v. United States,* 2011 WL 2038758, at *3 (D.N.J. May 23, 2011).

Here, no discovery has taken place to date.  Yet a significant amount of discovery will be required, including direct discovery from Defendant and third party discovery as well.[1]  Moreover, expert interpretation of some of the terms and phrases in the Policy will be relevant here for the interpretation of the Policy.[2]   At this Motion to Dismiss stage, Defendant is attempting to deprive Plaintiff from developing a proper record for the case.[3]

Accordingly, aside from relying on the fact that Defendant has a stiff burden to meet to gain a dismissal of this case under Rule 12 (b) (6) that it has not met, Plaintiff respectfully also suggests that it is entitled to discovery under Rule 56 (d) before any action can be taken on Defendant's Motion because of it raising factual issues involving the interpretation of the Policy and its provisions and factual issues relating to the Civil Authority Orders, the extent of the impact

---

[1] *See, i.e.,* ISO subpoenas at Exhibit A (Golomb Decl.) and attachments 1 and 2 therein.

[2] *See, i.e.,* Declaration of Tom Baker, a University of Pennsylvania Wharton professor, on some of the common words and phrases used in policies, at Exhibit A (Golomb Decl.) and attachment 3 therein.

[3] *See* Exhibit A (Golomb Decl.) at ¶14 ("In addition, to address fact questions raised by Defendant in its Motion, expert discovery may be necessary on such matters as: the science of the Coronavirus, sanitation issues, persistence of the Coronavirus in the atmosphere and within properties and adjacent properties, expert opinion about impact of the Coronavirus on property, the meaning of the Civil Authority Orders among other issues.  Defendant's attempt to gloss over these factual issues and need for expert evidence should not be countenanced.")

of those Orders on Plaintiff, Plaintiff's compliance with the Orders.

## IV.    ARGUMENT

### A.    The Court Should Not Enforce Defendant's Purported Virus Exclusion

#### 1.    Plaintiff's Contract Is Inherently Adhesive and Controlling Pennsylvania[4] Law Dictates it Must be Analyzed with Careful Scrutiny

An insurance contract, like that obtained by the Plaintiff here, is an inherently adhesive

instrument.  The Pennsylvania Supreme Court definitively agrees:

> The traditional contractual approach fails to consider the true nature
> of the relationship between the insurer and its insureds. Only
> through the recognition that insurance contracts are not freely
> negotiated agreements entered into by parties of equal status; only
> by acknowledging that the conditions of an insurance contract are
> for the most part dictated by the insurance companies and that the
> insured cannot "bargain" over anything more than the monetary
> amount of coverage purchased, does our analysis approach the
> realities of an insurance transaction.

*Collister v. Nationwide Life Ins. Co.*, 388 A.2d 1346, 1353 (Pa. 1978) (citation omitted).  As a

result, courts must employ special considerations when applying Pennsylvania law to analyze an

insurance contract.  *See Bishops, Inc. v. Penn Nat. Ins.*, 984 A.2d 982, 989 (Pa. Super. Ct. 2009)

("When interpreting a policy of insurance, we employ an analysis which, while derived from the

law of contracts, recognizes that most insurance transactions are not freely bargained between

equals but are largely adhesive in nature.") (citation omitted).

---

[4] Because the underlying location of the insured risk (the property) is located in Pennsylvania, the interpretation of the Policy is to be made pursuant to Pennsylvania law. Defendant agrees. *See* Motion to Dismiss, D.E. # 29 at p. 15-16; *see also Sciolla v. W. Bend Mut. Ins. Co.*, 987 F. Supp. 2d 594, 599 (E.D. Pa. 2013) (applying Pennsylvania law in a diversity case when the parties agreed Pennsylvania law applied).  Because this is a diversity case, if the court were to engage in a choice of law analysis, Pennsylvania law still applies. "[U]nder Pennsylvania choice of law principles, the state which has the most interest in settling the dispute and which is the most concerned with its outcome is the state whose law should be applied." *Celebre v. Windsor-Mount Joy Mut. Ins. Co.*, No. CIV. A. 93-5212, 1994 WL 13840, at *1 (E.D. Pa. Jan. 14, 1994) (citation omitted). "[T]he principal location of the insured risk should govern which state's law applies in a first-party property insurance case." *Id.* at *3. Here, the Plaintiff's business, location of loss, and insured property are all in Pennsylvania, which leaves no dispute that Pennsylvania law applies.

Accordingly, a court applying Pennsylvania law must resolve any contractual ambiguities in favor of the insured.  *See* Section III-A, *supra*; *Sciolla v. W. Bend Mut. Ins. Co.*, 987 F. Supp. 2d 594, 599 (E.D. Pa. 2013) ("Ambiguous insurance policy provisions are construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage.") (citations and quotations omitted) (applying Pennsylvania law).  ***Most importantly,*** Courts must strictly construe an exclusion against the insurer who is trying to rely upon it.  *Swarner v. Mut. Ben. Grp.*, 72 A.3d 641, 645 (Pa. Super. Ct. 2013) ("Exclusionary clauses generally are strictly construed against the insurer and in favor of the insured.").

### 2.   The Purported Virus Exclusion in Plaintiff's policy is Ambiguous and Does Not Apply.

Given that exclusions must be strictly construed against the insurer and any ambiguities resolved in favor of the insured, any ambiguity in the exclusion inures to the benefit of the Plaintiff. The relevant language of Defendant's Virus Exclusion provides: "[w]e will not pay for loss or damage caused directly or indirectly by…any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Policy at pg. 41, 44

"Policy provisions are ambiguous . . . when they are reasonably susceptible of different constructions and capable of being understood in more than one sense." *Swarner*, 72 A.3d at 645 (citation and quotations omitted).   "[This is also not a question] to be resolved in a vacuum. [Rather], contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

Here, the relevant language from the Virus Exclusion is subject to more than one reasonable interpretation when applied to the particular factual circumstances present.  Plaintiff

has specifically pled that the Civil Authority Orders caused its losses and not the virus itself.  *See*
Amended Complaint ¶¶ 37, 63, 69.  What is at issue here is what Plaintiff has pleaded, not how
Defendant prefers to interpret the Complaint.  Under the factual circumstances, Plaintiff's manner
of pleading the claim is completely reasonable and should be accepted for purposes of this Rule
12 Motion.  What Defendant is attempting to do, however, is to extend the language of the Virus
Exclusion to apply to a claim based on damage caused by orders of a civil authority.  In essence,
Defendant is attempting to mix the apples from one part of the Policy with the oranges of another
part of the Policy. Doing so defies the basic principles Pennsylvania courts apply when interpreting
an insurance exclusion: strict construction. Defendant's reading of the exclusion is limitless and
would produce absurd results.  *See Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*,
976 F.2d 1037, 1043 (7th Cir. 1992) ("Without some limiting principle, the pollution exclusion
clause would extend far beyond its intended scope, and lead to some absurd results."). Here,
Defendant has one goal and one goal only—to avoid coverage—which would be an absurd result
where an insured has paid good money in a premium for the purchase of coverage to protect itself
from business interruption, only for the carrier to assert multiple reasons that the Policy really does
not provide that coverage at all.

Further supporting Plaintiff's argument that the Virus Exclusion does not preclude this case
is the fact that in no way does it mention a pandemic situation or exclude anything related to the
damages incurred as result of a pandemic.  With the black letter law cited above holding that
ambiguities in policies are to be construed against the carrier, the absence of the Policy making
any mention whatsoever of the word "pandemic" and this case being based on a pandemic, leads
to the conclusion that Defendant is not entitled to dismissal.

The World Health Organization has categorized COVID-19 as a pandemic.  *See* Amended

Complaint at ¶ 43.   Merriam and Webster's defines pandemic as "an outbreak of a disease that occurs over a wide geographic area and affects an exceptionally high proportion of the population: a pandemic outbreak of a disease[.]"[5]   Other insurers have been much more specific in drafting and specifically using the pandemic language.  *See, e.g*, *Meyer Nat. Foods, LLC v. Liberty Mut. Fire Ins. Co.*, 218 F. Supp. 3d 1034, 1038 (D. Neb. 2016) ("The actual or suspected presence or threat of any virus, organism or like substance that is capable of inducing disease, illness, physical distress or death, whether infectious or otherwise, including but not limited to any epidemic, pandemic, influenza, plague, SARS, or Avian Flu.").  The Court should not reward the Defendant for failing to properly draft its exclusion nor permit it to expand the scope of its Virus Exclusion that does not address a pandemic.

Accordingly, because Plaintiff's losses were not specifically caused by a virus, because Plaintiff's Policy is an all-risk policy, and because the Virus Exclusion does not address a pandemic, Plaintiff's losses should be covered.  An all-risk policy includes coverage for all risks unless specifically excluded.[6]  Here, there is no such specific exclusion, so the all-risk policy at issue should be found to specifically protect against Plaintiff's COVID-19 losses.

### 3. Dismissing Plaintiff's Case Based Upon the Virus Exclusion at this Stage Would be Premature

Ultimately, the issue raised in Defendant's Motion to Dismiss regarding the Virus Exclusion is not ripe at this stage of the litigation.  Material and complex factual issues—including the validity, purpose, and scope of the Virus Exclusion—have not yet been fully investigated.

---

[5] *See* https://www.merriam-webster.com/dictionary/pandemic (last visited October 16, 2020).

[6] "All-risks coverage provides coverage for any incident that an insurance policy doesn't specifically exclude." *See* https://www.investopedia.com/terms/a/all-risks-coverage.asp (last visited July 21, 2020); *see also* Amended Complaint at ¶ 20 ("An all-risk policy is one that protects against catastrophic events, such as the Coronavirus (also known as COVID-19.  COVID-19, a pandemic currently being experienced on a global scale, has resulted in the widespread, omnipresent and persistent presence of COVID-19 in and around Plaintiff's Insured Property and adjacent properties.").

Plaintiff here also intends to serve discovery on the ISO regarding how the Virus Exclusion was drafted, correspondence with Pennsylvania insurance regulators relating to the Virus Exclusion, and whether regulatory estoppel should apply because of misleading or inaccurate representations to the Department of Insurance that were used to gain approval of the Virus Exclusion included in Defendant's Policy. *See* Ex. A.  This discovery is necessary to determine whether the Virus Exclusion applies in this case and whether it was even applied to Plaintiff's Policy properly.

### 4.    Plaintiff's Regulatory Estoppel Theory Provides an Adequate Basis for Further Investigation

"[U]nder  Pennsylvania's  doctrine  of regulatory estoppel,  an  industry  that  makes representations to a regulatory agency to win agency approval will not be heard to assert the opposite position when claims are made by litigants such as insured policyholders." *Hussey Copper, Ltd. v. Arrowood Indem. Co.*, 391 F. App'x 207, 211 (3d Cir. 2010) (citation, quotations, and emphasis omitted); *see also Hussey Copper, Ltd. v. Royal Ins. Co. of Am.*, 567 F. Supp. 2d 774, 786 (W.D. Pa. 2008) ("The regulatory estoppel inquiry is different, however, as it focuses on the insurance industry's purported representations to state regulators) (report and recommendation of the magistrate judge adopted fully by the district judge) (applying Pennsylvania law).  *Hussey* is particularly on point because the Court permitted discovery regarding plaintiff's regulatory estoppel theory, focusing on what was said to state regulators in getting an insurance exclusion approved.  That is exactly what Plaintiff is asking for here.

Plaintiff has specifically alleged that:

> [T]he Virus Exclusion was first permitted by state insurance departments due to misleading and fraudulent statements by the ISO that property insurance policies do not and were not intended to cover losses caused by viruses, and so the Virus Exclusion offers mere clarification of existing law.  To the contrary, before the ISO made such baseless assertions, courts considered contamination by a virus to be physical damage.  Defendant's use of the Virus

> Exclusion to deny coverage here shows that the Virus Exclusion was
> fraudulently adopted, adhesionary, and unconscionable.

Amended Complaint at ¶ 38.  The document upon which Plaintiff relies in the Complaint for such

allegations highlights that Insurers should be precluded from using the Virus Exclusion because

of misrepresentations they made to regulators.  *See* https://www.propertycasualty360.com/2020/

04/07/here-we-go-again-virus-exclusion-for-covid-19-and-insurers/  (last  visited  October  16,

2020) ("Having falsely claimed that virus and contamination exclusions were already in effect,

that they were requesting regulatory approval for a mere clarification in the form, and that therefore

no premium reduction was warranted, the insurance industry should now be prevented from

relying on these exclusions to bar coverage for COVID 19 claims.").[7]

Like in *Hussey,* discovery on what Defendant and/or ISO said to Pennsylvania regulators

in getting the Virus Exclusion approved should be permitted.  As the Hussey Court aptly noted:

"[o]nce the facts come in, counsel may raise anew their arguments for and against coverage given

the regulatory estoppel doctrine. At that time, the parties and court will have greater context within

which to conduct their analyses." *Hussey*, 567 F. Supp. 2d at 787.

Regulatory estoppel is also firmly rooted in Pennsylvania law based upon the Pennsylvania

Supreme Court's decision in *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189 (Pa. 2001).

In *Sunbeam*, the Pennsylvania Supreme Court reversed the Superior Court's grant of

preliminary objections in the nature of a demurrer instructing the trial court to apply the doctrine

of regulatory estoppel.[8]   The Court based its decision on the following allegations from the

---

[7] In a Rule 12(b)(6) motion to dismiss the court may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Davis v. Wells Fargo,* 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)) (internal quotation marks omitted).  Accordingly, the article Plaintiff specifically references can be examined because Plaintiff relies upon it in part for its regulatory estoppel allegations.

[8] In Pennsylvania, "[p]reliminary objections in the nature of a demurrer test the legal sufficiency of the

plaintiffs' complaint:

> [I]n 1970 the insurance industry, including the defendant insurers, submitted to the Pennsylvania insurance department a memorandum which asserted that the disputed language—excluding coverage for pollution unless it was "sudden and accidental"—would not result in any significant decrease in coverage. The complaint alleged, moreover, that the insurance department relied on the industry's representation when it approved the disputed language for inclusion in standard comprehensive general liability policies without a reduction in premiums to balance a reduction in coverage.

*Id.* at 1192. The Court concluded: "[t]hus, having represented to the insurance department, a regulatory agency, that the new language in the 1970 policies—"sudden and accidental"—did not involve a significant decrease in coverage from the prior language, the insurance industry will not be heard to assert the opposite position when claims are made by the insured policyholders." *Id.* at 1192–93.[9]

### B. Plaintiff has Suffered and Sufficiently Pled Physical Loss of or Damage to its Property and Nearby Property

Defendant argues that Plaintiff has not alleged any physical loss or damage to its own or nearby property merely because the Complaint does not plead that the property sustained "physical damage" and that the policy requires "physical change to the property" in the form of "something that can be fixed or replaced – in order to trigger coverage." *See* Firstline Brief in Support of Motion to Dismiss at 16. Such a narrow interpretation of the "physical loss or damage" requirement is contrary to the plain, reasonable, and intended language of the Policy. *See Hughes v. Potomac Ins. Co. of D.C.*, 1999 Cal. App. 2d 239, 248-49 (Ct. App. 1962) ("Despite the fact

---

complaint." *Haun v. Cmty. Health Sys., Inc.*, 14 A.3d 120, 123 (Pa. Super. Ct. 2011) (citation and quotations omitted).

[9] Plaintiff recognizes that a motion to dismiss under the federal rules has a more exacting plausibility standard than the one employed under Pennsylvania law in *Sunbeam*. However, Plaintiff's allegations for regulatory estoppel are more than sufficient to withstand a Rule 12(b)(6) challenge. Plaintiff needs more factual information regarding what was specifically said and understood regarding the Virus Exclusion by Pennsylvania regulators.

that a 'dwelling building' might be rendered completely useless to its owners, appellant would deny that any loss or damage had occurred unless some tangible injury to the physical structure itself could be detected.  Common sense requires that a policy should not be so interpreted in the absence of a provision specifically limiting coverage in this manner.").

Neither "direct physical loss" nor "damage" is defined in the Policy,[10] but "physical loss of" is clearly an additional, and different, basis for coverage beyond "damage to" property—and a basis which Defendant almost completely ignores.  *See Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1991, 2007 (6th Cir. 1995); *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No CV 17-04908 AB, 2018 WL 3829767, at *3 (C.D. Cal. July 11, 2018); *see also Narricot*, 2002 WL 31247972, at *4 (recognizing that because the phrase "action of civil authority" was not defined in the policy, the words should be construed according to their ordinary English meaning, and any ambiguity "must be resolved in favor of the insured").  Because these phrases are stated in the disjunctive ("or"), they are clearly separate and distinct triggers of coverage.  *See Fountain Powerboat Indus., Inc. v. Reliance Ins. Co.*, 119 F. Supp. 2d 552, 557 (E.D.N.C. 2000).

Numerous courts nationwide agree that physical loss does not require structural damage, but lost operations or inability to use the business is sufficient.  *See, e.g.*, *Essex v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009) (finding that unpleasant odor was physical injury to property); *Motorists Mutual Ins. Co. v. Hardinger*, 131 Fed. Appx. 823, 825-27 (3d Cir. 2005) (finding that bacteria contamination of well water would constitute direct physical loss to house if

---

[10] "The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured." *Bubis v. Prudential Prop. & Cas. Ins. Co.*, 718 A.2d 1270, 1272 (Pa. Super. 1998). "[A] court's focus upon the insured's 'reasonable expectations' is not limited only to situations in which the insurance contract might be deemed ambiguous . . . ." *Betz v. Erie Ins. Exch.*, 2008 PA Super 221, ¶ 10, 957 A.2d 1244, 1253 (2008). "In any event, where the court finds the policy language to be ambiguous . . . determination of the parties' intent poses a question of fact . . . ." *Id.* at ¶ 11.

it rendered it unusable); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12-cv-04418, 2014 WL 6675934 (D.N.J. Nov. 25, 2014) (finding the presence of ammonia to constitute physical loss or damage because "property can sustain physical loss or damage without experiencing structural alteration").[11]   In finding coverage, courts have held that the *loss of functionality* is what is covered.  *Am. Guarantee & Liab.. Ins. Co. v. Ingram Micro, Inc.*, No. 99-185 TUC ACM, 2000 WL 726789, at *2 (D. Ariz. April 18, 2000) ("'physical damage' is not restricted to the physical destruction of harm . . . but includes *loss of access, loss of use, and loss of functionality*") (emphasis added).[12]  Further, a condition that renders property unsuitable for its intended use constitutes a direct physical loss, "even where *some utility remains*" constitutes physical loss or damage.  *See Cook v. Allstate Ins. Co.*, No. 48D02-0611-PL-01156 (Indiana Super. 2007); *Stack Metallurgical Servs., Inc. v. Travelers Indem. Co. of Connecticut*, No. 05-1315-JE, 2007 WL 464715 (D. Or. Feb. 7, 2007) (finding insured suffered "direct physical loss of or damage

---

[11] *See also TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D.Va. 2010) (finding losses due to sulfuric gas released by drywall were covered because "physical damage to the property is not necessary, at least where the building in question has been rendered unusable by physical forces"); *Sullivan v. Std. Fire Ins. Co.*, No. 515, 2007, 2008 WL 361141 (Del. Feb. 11, 2008) (finding mold contamination constituted a physical loss, recognizing "physical" is defined as "having material existence" and mold spores and other bacteria associated with mold undoubtedly have a "material existence" even though they are not tangible or perceptible by the naked eye); *Farmers Ins. Co. of Oregon v. Trutanich*, 858 P.2d 1332, 1336 (Or. 1993) (finding cost of removing odor from methamphetamine lab constituted direct physical loss); *Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52, 55 (Colo. 1968) (en banc) (finding that gasoline fumes which rendered church building unusable constitute physical loss); *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300 (Minn. Ct. App. 1997) (finding asbestos in building made the use of the building dangerous and constituted physical loss of the building and recognizing "direct physical loss" may exist in the absence of structural damage to the insured property because "a building's function may be seriously impaired or destroyed and the property rendered useless by the presence of contaminants"); *Matzner v. Seaco Ins. Co.*, 9 Mass. L. Rprt. 41 (Mass. Super. 1998) (finding the phrase "direct physical loss or damage" to be ambiguous and holding carbon monoxide contamination in an apartment building was sufficient to render building uninhabitable and was a "direct, physical loss").

[12] S*ee also One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11 C 2520, 2015 WL 2226202, at *9 (N.D. Ill. April 22, 2015) ("Where a general all-risk commercial or homeowner's policy insures against both 'loss' and 'damage' to an existing structure, 'physical' damage may take the form of loss of use of otherwise undamaged property, which in turn suffices as a covered loss."); *Dundee Mut. Ins. Co. v. Marifjeren*, 587 N.W.2d 191, 194 (N.D. 1998) (finding coverage in the absence of physical alteration because the properties "no longer performed the function for which they were designed"); *Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co.*, 968 A.2d 724 (N.J. App. 2009) (recognizing that since "physical" can mean more than material alteration or damage, "damage" includes loss of function or value, and "physical damage" can include the temporary loss of use due to a power interruption).

to" covered property when the property could not be used for its "ordinary expected purpose" even though the property could still be used for other income-generating purposes). It has even been held that fear of damage can be a direct physical loss. *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 17 (W.Va. 1998) (finding home rendered unusable by increased risk of rockslide suffered direct physical loss even in the absence of structural damage).

A federal court in Oregon took this analysis one step further after an open-air theater shut down because of ambient wildfire smoke and health concerns over poor air quality. *Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 1:15-CV-01932-CL, 2016 WL 3267247 (D. Or. June 7, 2016), *vacated based on a joint stipulated request by the parties,* No. 1:15-CV-019320CL (D. Or. Mar. 6, 2017). The court noted that air was a physical thing, explaining that "certainly air is not mental or emotional, nor is it theoretical." Structural damage was not required for a loss and it was a stretch on the part of the insurer to impute that requirement when it was not in the policy. *Id.* The theater had to be cleaned, air filters were replaced repeatedly, and the air quality had to improve before business could resume. *Id.* The court held "[e]ven though the loss or damage was not structural or permanent, the property experienced a loss of 'essential functionality.'" The court went on to find coverage for the loss of business income when the "smoke infiltrated the theater and rendered it "unusable for its intended purpose."

Coverage has also been found where the impairment of function occurred by operation of law. In *General Mills, Inc. v. Gold Medal Insurance Co.*, 622 N.W. 2d 147, 150 (Minn. Ct. App. 2001), a routine inspection discovered that oats had been treated with a pesticide that was used for other food products and presented no danger to consumers, but technically was not FDA-approved for oats. The court found coverage for the undamaged oats, holding "[w]hether or not the oats could be safely consumed, they legally could not be used in General Mills' business. The district

court did not err in finding this to be *an impairment of function and value* sufficient to support a finding of physical damage." *Id.* at 152 (emphasis added).

The Third Circuit caselaw cited by Defendant supports Plaintiff's interpretation of "physical loss" and reiterates that physical loss can occur when a property is uninhabitable or unusable for its intended purpose.

In *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002), the court acknowledged there does not have to be actual contamination of property for coverage, so long as a physical cause imminently threatens a property's function or habitability.  Likewise, the Third Circuit's decision in *Motorists Mut. Ins. Co. v. Hardinger*, 131 Fed. App'x. 823 (3d Cir. 2005), relies on the *Port Authority* decision and reiterates that property made useless or uninhabitable constitutes a physical loss.  Consequently, the court reversed the lower court's grant of summary judgment, recognizing that whether there was a physical loss is a genuine issue of material fact. *Id.* at 827.

The remainder of the cases cited by the Defendant are distinguishable and otherwise do not support Defendant's interpretation under the circumstances of the current claims and Policy language.

*Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280 (S.D.N.Y. 2005) involved only purely economic losses arising from the grounding of airlines after September 11, 2001; because the plaintiff's garage was part of Philadelphia International Airport and depended on the airport to attract its customers, the plaintiff's business was interrupted as a result of the groundstop.  *Id.* at 283.  This is a far cry from the Plaintiff's allegations in this matter—where a viral pandemic has physically affected not only Plaintiff's business and those in the immediate vicinity of Plaintiff's

property, but also those throughout the entire Commonwealth of Pennsylvania and the world.[13]

In its Amended Complaint, Plaintiff alleges that its insured property was at imminent and continued risk of Coronavirus contamination, if it was not contaminated already. *See* Amended Complaint at ¶¶ 20, 35, 41, 66.  Defendant's arguments essentially criticize Plaintiff's (and the world's) imperfect knowledge about the presence of COVID-19, but if it were knowable where the virus is, there would not likely be an ongoing pandemic.  The nature of the pandemic is such that Plaintiff experienced physical loss as a result of the pandemic and the resulting Civil Authority Orders, regardless of an indisputable assertion that COVID-19 was present in Plaintiff's building, or anywhere, at any given time.  Rather, the allegations in the Complaint were based on "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." FED. R. CIV. P. 11(b).

As alleged in the Amended Complaint, the COVID-19 pandemic has resulted in the "widespread, omnipresent and persistent presence of COVID-19 in and around Plaintiff's Insured Property and adjacent properties." Amended Complaint at ¶ 20; *see also Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 889-90 (Pa. 2020) (affirming the Pennsylvania governor's authority to

---

[13] Additionally, the Insurance Services Office ("ISO")—the organization responsible for drafting the standardized language in Plaintiff's Policy—has affirmed that a virus can cause physical loss and damage merely by its presence. The ISO's 2006 circular for an Exclusion Regarding Loss Due to Virus or Bacteria reads, in part:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses.

> Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

ISO Circular LI-CF-2006-175, New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria, ISO (July 6, 2006), https://www.propertyinsurancecoveragelaw.com/files/2020/03/ISO-Circular-LI-CF-2006-175-Virus.pdf.

declare the entire state a "disaster area" because "COVID-19 cases have now been reported in all counties in the Commonwealth").  Plaintiff's business has been affected by the Civil Authority Orders prohibiting access to its insured property due to the clear evidence of the Coronavirus being present throughout Pennsylvania, and especially in Philadelphia County, and the severe safety risks associated with allowing individuals to come in close contact. Amended Complaint ¶¶ 20, 35, 41, 61-75.

Furthermore, two recent decisions from the Western District of Missouri, which Defendant fails to acknowledge in its Motion to Dismiss, both provide support for Plaintiff's argument: *Studio 417, Inc., et al. v. The Cincinnati Insurance Company*, No. 4:20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) and *K.C. Hopps, Ltd. v. The Cincinnati Insurance Company*, No. 4:20-cv-00437-SRB (W.D. Mo. Aug. 12, 2020).[14]  In *Studio 417*, the plaintiff owned and operated numerous hair salons as well as a restaurant group in the Springfield, Missouri, metropolitan area and sought coverage from its property insurer for business income losses incurred when its hair salons and restaurants were forced to close as a result of the Coronavirus pandemic and related government closure orders.  The decisions in *Studio 417* and *K.C. Hopps* address two key issues relevant to the Motion to Dismiss before this Court.

Of note, the *Studio 417* court rejected defendant's argument that the civil authority orders at issue did not prohibit access to the premises as required by the policy.[15] In doing so, the Court reasoned that at the motion to dismiss stage plaintiff's allegations that it was required to suspend

---

[14] The Honorable Stephen R. Bough of the Western District of Missouri presided over both referenced matters. Judge Bough's Order in *K.C. Hopps* adopted the reasoning detailed in *Studio 417* because both matters involve the same Defendant, similar insurance provisions and similar factual allegations.

[15] Defendant also argued that there was no "direct physical loss to property" as required by the policy to trigger civil authority coverage, which the Court rejected for the reasons detailed herein.

its hair salon operations and/or prohibit all indoor dining[16] at the behest of the government closure orders were plausible allegations to trigger civil authority coverage. *Id.* at 13-14. The Court in *Studio 417* explained that this holds true even in the case of restaurants that were required to suspend all indoor dining operations, but continued to offer drive-thru, pickup, or delivery options because the Policy required a prohibition of access but did not specify "all access" or "any access." Although the Pennsylvania Supreme Court did permit law firms to maintain operations to participate in essential court functions, the fundamental issue is whether there was access to Plaintiff's physical premises. Access was prohibited and Plaintiff was unable to carry out all non "essential" functions that are part and parcel of its business.

Additionally, a key determination in *Studio 417* was what constitutes direct "physical loss" or "damage." The court denied defendant's motion to dismiss and concluded that plaintiff adequately alleged a direct "physical loss" under the Policy. The court reasoned that because the policy failed to define the key terms of "direct physical loss" and "damage" it was left to "rely on the plain and ordinary meaning of the phrase." *Id.* at 8. Using the plain meaning of "direct," "physical," and "loss," the court concluded that Plaintiff sufficiently alleged physical loss through allegations in its complaint that COVID-19 "lives on" and "is active on inert physical surfaces" resulting in Plaintiff's property being "unsafe" and "unusable". *Id.* Expounding even further, the Court, citing nationwide case law, concluded that absent a physical alteration, a physical loss still occurs when the property is uninhabitable or unusable for its intended purpose and to conclude otherwise would render either "physical loss" or "damage" superfluous. *Id.* at 9.

Finally, in a recent decision by the Superior Court of New Jersey, Law Division, in *Optical Services et. al v. Franklin Mutual Insurance Company*, Dkt. No. BER-L-3681-20 (Aug. 13. 2020),

---

[16] The plaintiff in K.C. Hopps owns and operates several restaurants and bars in the Kansas City metropolitan area.

the trial court denied a motion to dismiss in a similar business interruption case arising out of the Covid-19 pandemic.  At oral argument, which is attached hereto as Exhibit B, the Court disagreed with defendant's claim that business losses caused by Covid-19 did not constitute "direct physical loss," finding that it was "unsupported … by a blanket review of the policy language." Exhibit B at 26.  Moreover, the court also held that the plaintiff "should be permitted to engage in issue-oriented discovery" and that a motion to dismiss was "premature at best." *Id*.  At a minimum, there is a split of authority on these issues, which only further supports the propriety of permitting Plaintiff to conduct discovery and develop a record to substantiate its allegations against the Defendant.

Regardless, whether Plaintiff did indeed suffer a physical loss or damage caused by a covered cause of loss is a question of fact, not a legal issue to be determined at the motion to dismiss stage.  Because Plaintiff has adequately pleaded allegations supporting coverage, Defendant's motion to dismiss is due to be denied.

### C. Civil Authority Coverage Applies to Plaintiff's Losses

Finally, Defendant argues it is absolved from providing coverage because Plaintiff (i) fails to allege that the civil authority prohibited the access to the insured property, and (ii)fails to allege that the "governmental Orders" were issued 'as a result of' damage to other property within one mile of the insured premises and further that the Orders were issued in response to 'dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage.'" *See* Firstline Brief in Support of Motion to Dismiss at 23-25.

### 1. Plaintiff Sufficiently Pled that The Civil Authority Orders Prohibited Access to the Premises at Issue

It is plain that Plaintiff has alleged a prohibition of access to Plaintiff's property as required per the Civil Authority provision. Specifically, Plaintiff alleged, among other things, that **"access**

to Plaintiff's business was prohibited by Civil Authority Orders." Amended Complaint at ¶ 31 (emphasis added). Furthermore, Plaintiff specifically alleges that the Civil Authority prohibited access to the covered premises and the **surrounding area**. Amended Complaint at ¶ 94 (emphasis added). It is plain that Plaintiff has sufficiently pled a prohibition of access to its property and adjacent properties.

Furthermore, to the extent that Defendant argues that because Plaintiff's restaurant was able to provide delivery and/or take out options, Plaintiff, again points to the decision by the Court in *Studio 417*, which explained there is a prohibition of access even in the case of restaurants that were required to suspend all indoor dining operations, but continued to offer drive-thru, pickup, or delivery options because the Policy required a prohibition of access but did not specify "all access" or "any access." *Studio 417, Inc., et al. v. The Cincinnati Insurance Company*, No. 4:20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020);

      2.    **The Civil Authority Orders were Issued as a Result of Damage to the Insured Property and Nearby Property.**

Next, Defendant, argues that Plaintiff failed to allege damage to nearby property other than the insured premises. Frontline Brief in Support of Motion to Dismiss at pg. 24.

In response, Plaintiff incorporates by reference the arguments asserted at Section IV.B. *supra*, as they are equally applicable to the Defendant's claim that Plaintiff has not sufficiently pled or alleged damage to property and nearby property.

As stated above and specifically alleged by Plaintiff in its Amended Complaint, the COVID-19 pandemic has resulted in the "widespread, omnipresent and persistent presence of COVID-19 **in and around** Plaintiff's Insured Property and **adjacent properties**" and "The Coronavirus resulted in the suffering of physical harm and impact and damages occurring both within Plaintiff's Covered Property and/or **within the immediate area surrounding and outside**

**the Covered Property.**" Amended Complaint at ¶¶ 20, 68 (emphasis added). Thus, any assertion

by Defendant that Plaintiff has failed to allege loss and/or damage to nearby and/or adjacent

property is at best described as disingenuous. Defendant's Motion to Dismiss should be denied.

      **D.**     **The Doctrine of Reasonable Expectations is Applicable**

     Finally, Defendant asserts that the doctrine of Reasonable Expectations is inapplicable to

this matter. However, Pennsylvania law dictates otherwise.

     Plaintiff had no part in the drafting of any Policy language, so Plaintiff's reasonable

interpretation of the Policy should be favored. *See Healy Tibbitts Constr. Co.*, 72 Cal. App. 3d at

749 ("[I]nsurance contracts are regarded as contracts of adhesion expressing the superior

bargaining power of the insurer, and as a consequence the exclusions and exceptions in the

insurance policy are strictly construed against the insurer and liberally interpreted in favor of the

insured.") (citations omitted); *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1265, 833 P.2d

545, 552 (Cal. 1992) ("[A] court that is faced with an argument for coverage based on assertedly

ambiguous policy language must first attempt to determine whether coverage is consistent with

the insured's objectively reasonable expectations."). Even the most clearly written exclusion will

not bind an insured where the insurer or its agent has created in the insured a reasonable

expectation of coverage. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895 (3d Cir. 1997), as amended,

(Aug. 28, 1997) (applying Pennsylvania law). Even an insured's status as a sophisticated purchaser

of insurance will not foreclose application of the reasonable expectations doctrine to determine the

scope of coverage. *Id.* And, where the insurer or its agent create in the insured a reasonable

expectation of coverage that is not supported by the terms of the policy, that expectation will

prevail over the language of the policy. *UPMC Health System v. Metropolitan Life Ins. Co.*, 391

F.3d 497 (3d Cir. 2004).

Defendant's offering of the Policy instilled a reasonable expectation in Plaintiff that it was paying Policy premiums for business income and extra expense coverage and that if its business was forced to shut down, that the Policy would provide coverage for business interruption. Defendant's refusal to provide coverage is contrary to the reasonable expectations of the parties, and must be disfavored. Plaintiff has sufficiently pled as much in its Amended Complaint (Amended Complaint at ¶ 32) and on this basis alone Defendant's Motion to Dismiss should be denied. Plaintiff's allegations must be taken as true at this stage of the litigation, and its various theories necessitate the development of a record before the merits of its argument can be properly evaluated.

## V.      CONCLUSION

As set forth herein and in the accompanying documents, for the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

| | |
|---|---|
| */s/ Richard Golomb* <br> Richard M. Golomb, Esq. <br> Kenneth J. Grunfeld, Esq. <br> **GOLOMB & HONIK, P.C.** <br> 1835 Market Street, Suite 2900 <br> Philadelphia, PA 19103 <br> Telephone: (215) 985-9177 <br> rgolomb@golombhonik.com <br> kgrunfeld@golombhonik.com | Arnold Levin, Esq. <br> Laurence Berman, Esq. <br> Frederick Longer, Esq. <br> Daniel Levin, Esq. <br> **LEVIN SEDRAN & BERMAN LLP** <br> 510 Walnut Street, Suite 500 <br> Philadelphia, PA 19106-3697 <br> Telephone: (215) 592-1500 <br> alevin@lfsblaw.com <br> flonger@lfsblaw.com <br> dlevin@lfsblaw.com |
| W. Daniel "Dee" Miles, III <br> Rachel N. Boyd <br> Paul W. Evans <br> **BEASLEY, ALLEN, CROW, METHVIN,** <br> **PORTIS & MILES, P.C.** <br> P.O. Box 4160 <br> Montgomery, AL 36103 <br> Telephone: (334) 269-2343 <br> dee.miles@beasleyallen.com <br> rachel.boyd@beasleyallen.com <br> paul.evans@beasleyallen.com | Dated: November 25, 2020 <br><br> *Counsel for Plaintiff* |

**<u>CERTIFICATE OF SERVICE</u>**

I, Richard M. Golomb, Esquire, certifies that on this date, the foregoing was filed and served via the Court's CM/ECF Filing System.


Date:  November 25, 2020                          */s/ Richard M. Golomb*
                                                            Richard M. Golomb, Esquire