IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HUMANS & RESOURCES, LLC**, *d/b/a Cadence Restaurant*, <br><br> Plaintiff, <br><br> *v.* <br><br> **FIRSTLINE NATIONAL INSURANCE COMPANY**, <br><br> Defendant. | CIVIL ACTION <br><br> NO. 20-2152-KSM |

## MEMORANDUM

**MARSTON, J.**                                                                                           **March 4, 2022**

Plaintiff Humans & Resources, LLC, doing business as Cadence Restaurant ("Cadence"), brings a declaratory judgment claim against its insurer, Defendant Firstline National Insurance Company ("Firstline"), seeking coverage for business income lost due to government closure orders issued in response to the COVID-19 pandemic.  (Doc. No. 1.)  Firstline moved to dismiss the case (Doc. No. 17), which Judge Joyner[1] denied because Cadence may have reasonably expected that it was entitled to coverage (Doc. No. 20 at 25–27).  Presently before the Court are Firstline's Motion to Preclude Testimony of Expert, Jeffrey Stempel (Doc. No. 30), Firstline's Motion for Summary Judgment (Doc. No. 31), and Cadence's Motion for Summary Judgment (Doc. No. 34).  For the reasons below, Firstline's motion to preclude is granted, Firstline's motion for summary judgment is granted, and Cadence's motion for summary judgment is denied.

---

[1] This case was subsequently reassigned to Judge Marston.  (Doc. No. 28.)

**I.    BACKGROUND**

   *A.    Factual Background*

Viewing the evidence in the light most favorable to Cadence, the relevant facts are as follows.

Cadence is a fine-dining BYOB restaurant located in the South Kensington neighborhood of Philadelphia.  (Doc. No. 34 ¶¶ 2–3.)  Cadence is jointly owned by husband and wife Jonathan Nodler and Samantha Kincaid, but Nodler "handle[s] the majority of the decisions" about the restaurant.  (Doc. No. 35, Ex. 6 at 155–57.)  Prior to Cadence's opening in 2018, Nodler purchased an insurance policy for the restaurant.  (*Id.* at 157–58.)  He procured the policy through Steven Gordon, an agent at Montgomery Insurance Services.  (*Id.* at 159.)  Based on the restaurant's business model, Gordon recommended a businessowners' insurance policy from Firstline (the "Policy").  (*Id.* at 163.)

At no point did Gordon and Nodler discuss "civil authority coverage," "any particular details of the insurance coverage," or "policy exclusions or limitations on what it would cover." (*Id.* at 163–64.)  They only discussed the general coverage and "liquor liability" needed "for a 40-seat BYOB fine-dining restaurant."  (*Id.* at 165.)  Nodler did not discuss the Policy with anyone else from Montgomery Insurance Services or anyone at Firstline before he purchased it. (*Id.* at 164–65.)  At the time he purchased the Policy, Nodler had not contemplated whether it would cover losses related to "an issue like COVID-19, where a virus caused business losses," but he generally expected "that insurance would cover . . . scenarios where [his] business could be damaged."  (*Id.* at 168–69, 173.)

The Policy was issued in 2018.  (*Id.* at 168.)  It was an all-risk policy but excluded losses caused by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing

physical distress, illness or disease." (Doc. No. 35 ¶¶ 33, 41.) Cadence renewed the Policy without any material changes in 2019 and again in 2020.[2] (Doc. No. 35, Ex. 6 at 169–70.)

In March 2020, in an effort to mitigate the spread of the COVID-19 pandemic, the City of Philadelphia and the Commonwealth of Pennsylvania issued orders requiring non-essential businesses to cease operations. (Doc. No. 35 ¶¶ 8–9.) Restaurants were permitted to stay open for carryout and delivery, but they were not allowed to offer dine-in services. (*Id.*) Cadence, a dine-in only restaurant, chose not to offer carryout or delivery, so the closure orders caused the restaurant to "los[e] revenue and suffer business income losses." (*Id.* ¶ 16.)

### B.  *Procedural History*

On May 4, 2020, Cadence filed this action seeking a declaratory judgment that the business losses it incurred due to the closure orders were covered under the policy. (Doc. No. 1.) Firstline filed a motion to dismiss, arguing that the Policy's virus exclusion and certain other provisions precluded coverage. (Doc. No. 17.) Judge Joyner agreed that the plain language of the Policy clearly and unambiguously barred coverage; however, he held that Cadence had plausibly alleged that it was entitled to coverage because it reasonably expected that the Policy would cover such losses. (Doc. No. 20.) The parties conducted limited discovery on Cadence's reasonable expectations, and Professor Jeffrey Stempel provided an expert report opining on Cadence's reasonable expectations. (Doc. No. 35, Ex. 3.)

Following discovery, Firstline moved to preclude Professor Stempel's report, asserting that it "would not be helpful to the trier of fact" and is "replete with the Professor's opinions

---

[2] Other than the claim at issue, Cadence never filed any claims and only spoke with Gordon once in 2018 regarding the extent of the Policy's coverage for an off-site food festival. (Doc. No. 35 ¶ 48; Doc. No. 35, Ex. 6 at 168.)

3

about the ultimate legal conclusions or about the law or legal standards." (Doc. No. 30 ¶ 4.) Cadence opposes the motion to preclude. (Doc. No. 34.).

Along with its motion to preclude, Firstline moved for summary judgment, arguing that Cadence has failed to establish that it reasonably expected the policy would cover losses incurred due to closure orders issued in connection with a pandemic. (Doc. No. 31.) Cadence opposes the motion for summary judgment and cross-moved for summary judgment. (Doc. No. 34.) Cadence contends it has shown it "had a reasonable expectation" its losses would be covered because it "purchased an all-risk insurance policy including coverage for business losses suffered in the event of a business interruption." (*Id.* at 8.) Firstline opposes Cadence's motion for summary judgment. (Doc. No. 38.)

## II. LEGAL STANDARD

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "[T]]he inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the

motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and alterations omitted).

"The same standards and burdens apply on cross-motions for summary judgment." *United States v. Weiss*, 461 F. Supp. 3d 183, 187 (E.D. Pa. 2020) (quoting *Allah v. Ricci*, 532 F. App'x 48 (3d Cir. 2013)). "If review of the cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts." *Id.* (cleaned up).

### III.   DISCUSSION

#### A.   *The Court Will Not Consider Professor Stempel's Report*

As an initial matter, the Court must determine whether we will consider Professor Stempel's report in assessing the parties' motions for summary judgment.

Professor Stempel is a lawyer and law professor who specializes in insurance law. (Doc. No. 35, Ex. 3 ¶¶ 1–2.) In his report, Professor Stempel begins by providing context on jurisprudential trends in contract law. (*Id.* ¶¶ 15–30.) He acknowledges that, in the past few decades, courts have been "giv[ing] greater emphasis to text" but claims "judicial views as to the reasonable expectations of the parties often influence the construction of text and the resolution of disputes." (*Id.* ¶¶ 29–30.) Professor Stempel then offers a history on the application of the concept of reasonable expectations in the insurance context and Pennsylvania's recognition of the reasonable expectations doctrine. (*Id.* ¶¶ 31–56.) Next, he provides background on business interruption insurance and explains the nature of all-risk policies. (*Id.* ¶¶ 57–83.) He explains that insurance companies market all-risk policies in a way that encourages "prospective purchasers . . . to presume that they have broad coverage consistent with the general name and overall purpose of the policy," and he contends that "insurance policies should accommodate the

5

policyholders' reasonable expectations." (*Id.* ¶¶ 84–98.)  Given this backdrop, Professor Stempel concludes that Cadence "anticipated coverage from the business interruption insurance he purchased" and that Cadence's expectations were, in his opinion, "inherently and objectively reasonable." (*Id.* at 35.)

Firstline argues the Court should not consider Professor Stempel's report in deciding the summary judgment motions because it "would not be helpful to the trier of fact in this case and, instead, [is] replete with the Professor's opinions about the ultimate legal conclusions or about the law or legal standards." (Doc. No. 30.)  Cadence responds that Professor Stempel's report is admissible because the "report and opinions are reliable, relevant, and admissible and they would assist the trier of fact in determining whether [Cadence's] expectation of coverage was objectively reasonable." (Doc. No. 40 at 12.)

An expert may offer an opinion "if the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).  An expert may also opine on the ultimate issue to be decided by the *trier of fact*.  Fed. R. Evid. 704(a).  But an expert may not opine on legal standards or the ultimate conclusion of law. *Patrick v. Moorman*, 536 F. App'x 255, 258 (3d Cir. 2013); *see also Nationwide Life Ins. Co. v. Commonwealth Land Title Ins.*, Civil Action No. 05–281, 2011 WL 204619, at *13 (E.D. Pa. Jan. 20, 2011) (citing *United States v. Leo*, 941 F.2d 181, 196–97 (3d Cir. 1991)) ("[T]he district court must limit expert testimony so as to not allow experts to opine on what the law required or testify as to the governing law.").

Professor Stempel's report goes directly to the ultimate legal conclusion—whether Cadence reasonably expected that losses incurred due to government-issued closure orders were covered by the Policy.  The thrust of the report is that, in light of the historical context of the

reasonable expectations doctrine and all-risk business insurance policies, Cadence's expectation that it was covered for "scenarios where [his] business could be damaged" was reasonable. (Doc. No. 35, Ex. 3 at 108.) The report is rife with citations to case law, goes into great detail on how Pennsylvania courts and the Third Circuit have applied the reasonable expectations doctrine, and applies the law to the case at hand to reach the ultimate legal conclusion. (*See, e.g.*, *id.* ¶¶ 54, 56.) These conclusions and analyses are exactly the subject matter courts in the Third Circuit have found to be impermissible conclusions of law. *See, e.g.*, *Shaffer v. State Farm Mut. Auto. Ins.*, 643 F. App'x 201, 205 (3d Cir. 2016) (affirming the district court's decision to preclude the expert's report on whether the insurer acted in bad faith where the expert report provided "a legal conclusion without adding any additional facts"); *Doherty v. Allstate Indem. Co.*, CIVIL ACTION NO. 15-05165, 2017 WL 1283942, at *27 (E.D. Pa. Apr. 6, 2017) (holding that the expert's conclusions regarding whether certain losses were covered under the insurance policy were inadmissible because the testimony went to "a legal question reserved for the court"); *Gallatin Fuels, Inc. v. Westchester Fire Ins.*, 410 F. Supp. 3d 417, 422–23 (W.D. Pa. 2006) ("[A]n expert may not give an opinion as to the ultimate legal conclusions that an insurer acted in 'bad faith' in violation of applicable law."); *cf. Patrick v. Moorman*, 536 F. App'x at 258 ("[T]he District Court did not abuse its discretion in excluding those parts of [the expert's] testimony which opined on the reasonableness of [the defendant's] actions."); *In re Wellbutrin SR Antitrust Litig.*, Civil Action Nos. 04–5525, 04–5898, 05–396, 2010 WL 8425189, at *6 (E.D. Pa. Mar. 31, 2010) (precluding experts from testifying as to "specific areas of patent law— including prosecution history estoppel, the doctrine of equivalents, and the meaning of [a doctrine]—and conclusions of law—including whether [the plaintiff] had an *objectively reasonable* basis to file [a suit]").

Moreover, the background information on the history and application of the reasonable expectations doctrine is inadmissible because it would not help the trier of fact ascertain whether Cadence's expectations were reasonable. *See McCrink v. Peoples Ben. Life Ins.*, No. 2:04-CV-01068-LDD, 2005 WL 730688, at *4 (E.D. Pa. Mar. 29, 2005) (concluding that an expert's testimony "on the issue of contract construction and, hence, coverage, would not assist the fact-finder in understanding a technical issue.").

Because Professor Stempel's report offers legal conclusions and would not assist the trier of fact, the Court will not consider it in deciding the motions for summary judgment.

### B. *Cadence Has Not Established It Reasonably Expected the Policy to Cover These Losses*

Having determined that we will not consider Professor Stempel's report, the Court must now determine whether Cadence is entitled to coverage under the Policy. Judge Joyner has already ruled the plain language of the Policy bars coverage for Cadence's losses. (Doc. No. 20.) Thus, to show that it is entitled to coverage under the Policy, Cadence must show that it reasonably expected that the Policy covered the losses it suffered as a result of the closure orders that the City issued to mitigate the spread of the COVID-19 pandemic.

Pennsylvania courts have adopted the "reasonable expectations doctrine," which "dictates that the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured." *Liberty Mut. Ins. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005) (quoting *Reliance Ins. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997)). A policy's plain language generally indicates the insured's reasonable expectations; however, courts must consider the "totality of the circumstances" surrounding the insurance transaction, and the insured's reasonable expectations may trump the plain language in limited circumstances. *Id.*

The reasonable expectations doctrine applies only where an insurer or its agent has made an "affirmative misrepresentation . . . about the contents of the policy"—absent deceptive behavior on the part of the insurer, the plain language of the policy "must be enforced." *West v. Lincoln Ben. Life Co.*, 509 F.3d 160, 169 (3d Cir. 2007); *see also id.* ("An analysis of the reasonable expectations of the insured is rightly employed when a claimant alleges that the insurer engaged in deceptive practices toward the insured, either to misrepresent the terms of the policy or to issue a policy different than the one requested by the insured and promised by the insurer."). The doctrine is "intended to protect against the inherent danger, created by the nature of the insurance industry, that an insurer will agree to certain coverage when receiving the insured's application, and then unilaterally change those terms when it later issues a policy." *UPMC Health Sys. v. Metro. Life Ins.*, 391 F.3d 497, 502 (3d Cir. 2004) (citing *Tonkovic v. State Farm Mut. Auto. Ins.*, 521 A.2d 920 (1987)).

Firstline argues that Cadence's claim fails because there is no evidence that Firstline engaged in any misconduct or made any misrepresentations that would have created a reasonable expectation of coverage. (Doc. No. 33 at 15.) Cadence responds that it reasonably expected the policy would cover losses it suffered due to the COVID-19-related closure orders because (1) Firstline never informed Cadence that it was not covered for such losses; (2) the policy is an "all-risk" policy; and (3) Nodler, who purchased the policy for Cadence, was not a sophisticated purchaser. (Doc. No. 34 at 11.) The Court considers Cadence's arguments in turn.

First, the fact that Firstline never "disabused [Cadence] of the notion that it was covered for scenarios such as [this]" (*id.*) is not relevant to the reasonable expectations analysis. The reasonable expectations doctrine applies only where the insurer or its agent makes an "*affirmative* misrepresentation" about the policy's coverage. *See Alleman v. State Farm Life*

9

*Ins.*, 334 F. App'x 470, 473 (3d Cir. 2009) (explaining that the reasonable expectations doctrine did not apply where the plaintiff was unable to identify any affirmative misrepresentations by the insurer); *see also Nautilus Ins. v. Bike & Build, Inc.*, 340 F. Supp. 3d 399, 417 (E.D. Pa. 2018) ("In the absence of any evidence suggesting that Nautilus engaged in deceptive practices toward Bike & Build to create a reasonable expectation of coverage, the Court must apply the Auto Exclusion as written to preclude coverage in this case.").

Cadence generally requested coverage "for a 40-seat BYOB fine-dining restaurant," but it did not specifically request coverage for losses it might incur due to pandemic-related closure orders. (*See* Doc. No. 35, Ex. 6 at 165.) In fact, Cadence concedes that "Mr. Nodler candidly did not contemplate a *specific* expectation regarding coverage for losses in the event of the exact scenario that unfolded: a global pandemic and a government-ordered shutdown of his business." (Doc. No. 34 at 14.) Because Cadence did not specifically request the coverage in dispute, Firstline's failure to inform Cadence that its COVID-19-related losses would not be covered does not constitute an "affirmative misrepresentation." *See Doherty*, 2017 WL 1283942, at *27 ("[T]hough she does contend that [the insurer] failed to inform her of any exclusions, such an omission would only rise to the level of an affirmative misrepresentation if [the insured] herself had specifically requested coverage for vandalism, tenant abuse and building code violations (as opposed to more generally requesting the best landlord coverage, coverage for all risks or coverage for the most common tenant-related losses."). *Contra Tonkovic v. State Farm Mut. Auto. Ins.*, 521 A.2d 920, 925 (Pa. 1987) (applying the reasonable expectations doctrine where the insured specifically requested "disability insurance" but was issued a policy that did not cover disability).

Second, the fact that the Policy was an "all-risk" policy does not mean that it was reasonable for Cadence to think it was covered for every potential loss because the Policy specifically enumerates exclusions. Nodler testified that he expected "that insurance would cover . . . scenarios where [his] business could be damaged" (Doc. No. 35, Ex. 6 at 173), but "[m]ere assertions that a party expected coverage will not ordinarily defeat unambiguous policy language excluding coverage," *West*, 509 F.3d at 169. The insured's belief must be objectively reasonable based on the insurer's representations about the policy. *Doherty*, 2017 WL 1283942, at *27. An insured's belief that all-risk policies cover every risk does not create an objectively reasonable expectation of coverage, especially where the policy's coverage is limited by exclusions. *See Frederick Mut. Ins. Co. v. Hall*, 752 F. App'x 115, 119 (3d Cir. 2018) (concluding that the insured could not have reasonably expected additional coverage beyond that typically included in "general" insurance contracts even though he requested "maximum, soup to nuts" liability coverage); *Heri Krupa, Inc. v. Tower Grp. Cos.*, Civil Action No. 12–4386, 2013 WL 1124401, at *6 (E.D. Pa. Mar. 18, 2013) (explaining that the fact the plaintiff purchased an "all-risk policy" did not support the plaintiff's argument that it reasonably expected every single risk to be covered where the plain language of the policy clearly listed exclusions); *Millers Capital Ins. v. Gambone Bros. Dev. Co.*, 941 A.2d 706, 717 (Pa. Super. Ct. 2007) ("United also invokes the reasonable expectations doctrine by asserting that when a consumer purchases a general liability policy the consumer expects to be protected from all liability . . . . United cannot circumvent the [policy's exclusions] without demonstrating ambiguity.").

Finally, Nodler's purported lack of sophistication does not render any expectations he may have had about the scope of the Policy's coverage reasonable. The reasonable expectations doctrine is typically applied to protect "unsophisticated non-commercial insureds." *A.P. Pino &*

11

*Assocs., Inc. v. Utica Mut. Ins.*, Civil Action No. 11–3962, 2012 WL 2567093, at *5 (E.D. Pa. July 3, 2012).  As a threshold matter, Cadence, a commercial entity, was the policyholder.  But even imputing Nodler's alleged lack of sophistication to Cadence, the doctrine does not apply because the plain language of the policy bars the coverage requested and Cadence has not identified any evidence of insurer deception.  *See Early v. U.S. Life Ins. Co. in City of N.Y.*, 222 F. App'x 149, 152–53 (3d Cir. 2007) (declining to extend the reasonable expectations doctrine even though the plaintiff was an individual purchaser because "parties cannot invoke Pennsylvania's reasonable expectation doctrine to create an ambiguity where the policy language itself is unambiguous"); *Allstate Ins. v. McGovern*, Civil Action No. 07-2486, 2008 WL 2120722, at *4 (E.D. Pa. May 20, 2008) (holding that the plaintiff, an individual purchaser, did not reasonably expect his personal auto insurance policy to cover an accident in a vehicle not listed as "covered" by the policy).

Moreover, there would be serious policy consequences if we were to adopt Cadence's argument that any expectations an insured has about the scope of coverage are necessarily reasonable when the insured is not a sophisticated purchaser.  The Superior Court of Pennsylvania explained these consequences in *Millers Capital Insurance*:

> If we were to allow an insured to override the plain language of a policy limitation anytime he or she was dissatisfied with the limitation by simply invoking the reasonable expectations doctrine, the language of insurance policies would cease to have meaning and, as a consequence, insurers would be unable to project risk. The inability to project risk would dissuade insurers from doing business in the Commonwealth and the net result would be an increase in premiums for consumers. We refuse to set such a deleterious sequence of events into motion.

941 A.2d at 717.

In sum, because Cadence did not expect that the Policy specifically covered losses due to shutdown orders issued in light of a pandemic and because Cadence has not proffered any evidence that Firstline ever misled it into thinking it had such coverage, the reasonable expectations doctrine does not apply.  Accordingly, the plain language of the policy governs, and Cadence is not entitled to coverage for losses incurred due to the COVID-19 closure orders.

## IV.     CONCLUSION

For the reasons above, the Court grants Firstline's motion to preclude Professor Stempel's report and Firstline's motion for summary judgment and denies Cadence's motion for summary judgment.  An appropriate Order follows.